# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, SALUSSOLIA, and HAGLER[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant THOMAS AYALA**
**United States Army, Appellant**

ARMY 20170336

Headquarters, United States Army Africa/Southern European Task
Joseph A. Keeler and Jeffery R. Nance, Military Judges
Colonel Louis P. Yob, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany Pond, JA; Major Todd W. Simpson, JA; Major Joshua G. Grubaugh, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy S. Watford, JA; Major Pamela Perillo, JA (on brief).

18 July 2019

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

We review this case under Article 66, UCMJ.[2] In his sole assignment of error, appellant asserts the military judge erred by admitting prior consistent statements of the victim under Military Rule of Evidence [Mil. R. Evid.] 801(d)(1)(B)(i) and (ii). We find the military judge did not abuse his discretion in admitting the statements

---

[1] Judge Hagler decided this case while on active duty and a member of the court.

[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of aggravated sexual contact in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2012). The military judge sentenced appellant to a bad-conduct discharge and confinement for eight months, and credited appellant with sixty days of confinement pursuant to Article 13, UCMJ, for illegal pretrial punishment by his chain of command. The convening authority approved the sentence as adjudged.

and further, that any error in admitting the contested statements did not substantially influence the military judge's findings.[3]

## BACKGROUND

Appellant's convictions arose from his sexual assault upon a female enlisted soldier, Specialist (SPC) AN, at Camp Lemonnier, Djibouti. In the early morning hours of 17 April 2016, appellant encountered SPC AN outside her containerized living unit (CLU) and asked if she would help him return a phone to a friend, Corporal (CPL) JG. After doing so, the two walked a short distance and entered appellant's CLU, where appellant sexually assaulted SPC AN. That morning, SPC AN reported the assault to her mother via a text message conversation, and later that day she reported it to military law enforcement authorities. As part of the subsequent investigation, SPC AN was interviewed by the Navy Criminal Investigative Service (NCIS). Her interview with NCIS was video recorded.

At trial, defense counsel cross-examined SPC AN at length, raising issues with her credibility. Specifically, defense counsel highlighted the number of times SPC AN repeated the details of the sexual assault to investigators, as well as with counsel in preparation for trial. The government responded by offering, as prior consistent statements, SPC AN's text messages with her mother and the video of her NCIS interview. Over defense objection, and after extensive discussion of the issue at several points in the trial, the military judge admitted portions of the texts and a redacted version of the NCIS video.[4]

## LAW AND DISCUSSION

This court reviews a military judge's ruling to admit evidence under Mil. R. Evid. 801 for abuse of discretion. *United States v. Springer*, 58 M.J. 164, 167 (C.A.A.F. 2003). We review a military judge's findings of fact under a clearly erroneous standard. *Id*. We review conclusions of law de novo. *United States v. Alameda*, 57 M.J. 190, 198 (C.A.A.F. 2003). "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art 59(a). For a

---

[3] We have considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and conclude they merit neither discussion nor relief.

[4] The military judge initially admitted SPC AN's written sworn statement to the Army Criminal Investigation Command (CID) and excluded the NCIS video as cumulative, but the government asked to admit the video in lieu of the written statement. The military judge did so, over the defense's objection to both exhibits.

nonconstitutional error, such as the error asserted by appellant, appellee has the burden of demonstrating that the error did not have a substantial influence on the findings. *United States v. Berry*, 61 M.J. 91 (C.A.A.F. 2005) (citations omitted).

### A. Admissibility of Prior Consistent Statements

A recent opinion of our court, *United States v. Finch*, guides our decision in this case. 78 M.J. 781 (Army Ct. Crim. App. 2019). In *Finch*, this court held that changes to the Military Rules of Evidence did not expand the scope of Mil. R. Evid. 801(d)(1)(B)(i), but subparagraph (B)(ii) of the same rule [hereinafter "Part (i)" and "Part (ii)"] allowed evidence previously admissible only under case law. *See Finch*, 78 M.J. at 786-87. Of import to this case, we noted Part (ii) contains no explicit temporal component like Part (i), yet it requires a prior statement to be consistent with the declarant's testimony at trial, and it must logically respond to the manner in which that declarant/witness' credibility was attacked. *Id*. at 787. In other words, and in the context of this case, if the defense attacks a victim's credibility by any means, then all of the victim's prior statements are *not* automatically admissible.[5]

Here, we find that the defense attacked SPC AN's credibility on multiple grounds throughout the trial, making it their central issue in the case. As defense counsel noted in closing argument:

> [SPC AN] has, at best, a casual relationship with the truth or with the obligations of the oath . . . . [E]verything in in her story is under a cloud of doubt because of credibility and motive issues . . . . [W]e went after her credibility from the very first thing I said in this case. We've continued to go after her credibility throughout the case.

Our review of the record reveals that the defense attacked SPC AN's credibility, directly or by implication, due to her review of her previous statements and preparation for trial, her training as a victim advocate, her faulty memory, her expressed interest in criminal justice and victims' issues, and her commission of a *crimen falsi* offense at age fifteen.[6] The defense also asserted and elicited evidence

---

[5] Although *Finch* was not decided at the time of appellant's trial, we note the military judge appeared to follow a similar rationale in ruling on the admissibility of the contested statements, and he employed a process consistent with *Finch* in describing how he would consider the statements in his deliberations.

[6] Defense counsel expressly disclaimed any effort to imply that government trial counsel improperly manipulated SPC AN's testimony during their pre-trial

(continued . . .)

of several motives to fabricate:  to protect her reputation, to avoid discipline for violating the housing policy, and to protect an alleged romantic relationship. Finally, the defense attempted to impeach SPC AN's credibility with prior inconsistent statements and by strongly implying she committed perjury on the stand.  We recognize that each of these grounds does not independently justify the admission of the two contested statements.[7]  However, taken as a whole, they clearly portray a concerted effort to attack SPC AN's credibility, and several of them provide support for the military judge's decision to admit portions of the statements consistent with her testimony.

Ultimately, we find the military judge did not abuse his discretion in admitting relevant portions of the statements under Mil. R. Evid. 801(d)(1)(B). More precisely, we find SPC AN's texts to her mother—properly admitted under Part (i)—tend to rebut the implication that she was improperly influenced by her preparations for trial and reviewing her prior statement to CID.  Likewise, some portions of SPC AN's NCIS video tend to rebut the same improper influence and are admissible under Part (i), as the video preceded her statement to CID.  Other portions of the video are admissible under Part (ii), as they tend to rehabilitate her credibility after it was broadly attacked by prior inconsistent statements and implicit allegations of perjury, among other grounds.  Although the military judge cited only Part (ii) in admitting the video, it was not an abuse of discretion simply because some parts were admissible under Part (i).  The military judge (and this court) might have parsed the video, statement-by-statement, applying Part (i) or Part (ii) to each, but we find this was unnecessary for an hour-long video exhibit in a judge-alone trial.[8]

_____

(. . . continued)

preparations.  Even so, we find defense counsel squarely implicated SPC AN's multiple reviews of her statements and extensive preparation for trial—with or without government counsel—as a reason to question her credibility.

[7] As an example, neither of the contested statements would be admissible to rebut the alleged motive to fabricate, as those motives would have existed at the time the contested statements were made.

[8] In court, the military judge reviewed, page-by-page, SPC AN's texts with her mother, identifying the portions he would admit and those he would exclude from his consideration.  This leads us to conclude that he would use the same discretion in considering the NCIS video during his deliberations.

## *B.  Prejudice*

Assuming *arguendo* that admitting the contested statements was error, we would still find no prejudice.  Appellant argues the statements had a substantial influence on the military judge's findings of guilt, primarily because they allowed SPC AN to repeat her claims multiple times.  We disagree.

"In determining the prejudice resulting from the erroneous admission of evidence, we weigh '(1) the strength of the [g]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'" *United States v. McCollum*, 58 M.J. 323, 342 (citations and internal quotation marks omitted).  Using this analysis, we find appellant suffered no material prejudice to any substantial right. UCMJ art. 59(a).

First, the government's case was strong.  Despite the defense's contention that the entire case turned on SPC AN's credibility, other evidence strongly supported appellant's guilt.  On 20 April 2016, three days after she was sexually assaulted, SPC AN and appellant exchanged emails, which included the following:

> [SPC AN:]  So just out of curiosity, why do you keep bringing up rape or whatever[?]
>
> [Appellant:]  It's a career ender . . . . [A]nd [I] didn't know if I crossed the line with you the other night[.]
>
> . . . .
>
> [SPC AN:]  Do YOU think you crossed the line?
>
> [Appellant:]  Yea . . . . [Y]ea I think I did[.]  I'm sorry if I did[.]

During appellant's interview with CID the next day, 21 April 2016, the agent questioned him about the events of 17 April.  Appellant replied, "Shit.  After returning [CPL JG's] phone, we came back to my CLU.  Shit.  Aw, fuck.  I'm kind of nervous because she's still talking to me today.  Holy fuck."  In light of his email to SPC AN the day prior, we view appellant's statements to CID as highly probative of his awareness that he had made a damning admission to her, and ultimately, of his guilt.

Second, the military judge explicitly stated he would not consider portions of the statements he found to be improper for various reasons, to include character evidence, hearsay statements, and evidence inadmissible under Mil. R. Evid. 412. Further, the military judge said he would not consider portions of the statements not relevant to rebut an improper influence or to rehabilitate SPC AN's credibility, and he directed the defense to identify those portions of the NCIS video to him.

Finally, it was the defense who first raised the prior statements during cross-examination of SPC AN. While the defense did attempt to impeach SPC AN with some inconsistencies, they mainly raised the statements to highlight their consistency and suggest SPC AN's testimony was influenced by her preparation for the case. Throughout the trial, the defense continued to characterize the repetition and consistency of SPC AN's story as indicative of her lack of credibility. The parties discussed the statements multiple times in court, and the defense argued that her repetition of the same story does not make it true.

Under these circumstances, we see little risk that the military judge was substantially influenced by an additional repetition of statements that were—by the defense's own contention—consistent with SPC AN's testimony at trial.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court